IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRIS CAMPBELL, | ) | |
|     Plaintiff. | ) | |
| | ) | |
| v. | ) | Case No.: 3:21-cv-05047-MDH |
| | ) | |
| SIG SAUER, INC., | ) | JURY TRIAL DEMANDED |
|     Defendant. | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Chris Campbell, files his First Amended Complaint against Defendant

SIG Sauer, Inc., and would respectfully show the following:

**SUMMARY OF ACTION**

1.      This action seeks damages, and equitable relief, relating to an incident that

occurred on May 20, 2020 and regarding Defendant SIG Sauer, Inc.'s striker-fired P320

pistol. Specifically, Plaintiff Chris Campbell alleges that on May 20, 2020, while acting

in a reasonable and appropriate manner, the SIG Sauer P320 pistol owned by Mr.

Campbell and contained in a hard plastic holster manufactured by the Defendant,

suddenly discharged while still contained in its holster. The unintentional firing caused a

projectile to fire into the Plaintiff's left foot, striking him through the jeans, grazing down

his left leg, and lodging pieces of the projectile including debris and hard plastic, into the

Plaintiff's foot.  Plaintiff contends that the unintended firing of the pistol occurred

without contact with the trigger mechanism and that the firing was the result of a yet to

be determined manufacturing or production defect and/or flaw.  Plaintiff has suffered

injuries as a result of this incident and seeks relief for this cause.

2. The SIG P320 was introduced in 2014, manufactured by SIG Sauer, Inc; the P320 is a striker-fired, semi-automatic pistol and the first striker-fired pistol manufactured by SIG for public use; the Plaintiff received his SIG P320 in or around 2015.

3. The SIG Sauer P320 is a striker-fired pistol which contains no external hammer, instead the mechanisms which are required to engage the firing pin and fire the weapon are internally contained, which includes multiple parts that are held under pressure by an internal spring and sear pin. In this illustrative photo of a typical striker-fired pistol, the striker, in red, is held back by the sear, in blue.



4. The Plaintiff alleges that the discharge and resulting injury he suffered were a direct result of some internal failure or defect, as the pistol's trigger and firing mechanisms were inaccessible to the Plaintiff and protected from unintended contact by

the SIG Sauer holster he was wearing, leaving the pistol fully secured at the time of the discharge.

5. Plaintiff, Chris Campbell is a 49-year-old male and as a result of this incident he has incurred severe and permanently disfiguring injuries, which occurred when his SIG Sauer P320 pistol discharged by itself while fully holstered and shot him on May 20, 2020. This un-commanded discharge blew through the holster, and the plastic shrapnel grazed the front of left leg and back of right leg and embedded itself in the left foot.

6. As a result of the discharge, Campbell has endured chronic pain caused by the damage from the shrapnel, and lingering pain from the fractured left forth metatarsal caused by the un-commanded discharge. This pain ranges from dull, aching, and throbbing, to stabbing, sharp, burning, tingling, numbing, shooting, and electric-like in nature. Plaintiff reports that the pain is worse when he is standing, walking, bending, lifting, doing home chores, and with weather changes, he reports that the pain is not alleviate by sitting or lying down and that the pain subsides only slightly while using pain control medication. This injury has limited Campbell's mobility in his foot and toes. Plaintiff has begun to suffer from physiological abnormalities, including pain in his back and a shift in certain portions of his back, which are likely caused by the change in the Plaintiff's gait since the incident.

7. Chris Campbell's P320 should not have discharged without the trigger being pulled, whether holstered or un-holstered. In its "Safety Without Compromise" marketing materials for the P320, SIG states:



*We've designed safety elements into every necessary feature on this pistol. From the trigger to the striker and even the magazine, the P320 won't fire unless you want it to.*

8.      Despite the reassurance of the advertisement presented by the Defendant, Mr. Campbell's weapon fired without the trigger being pulled.

9.      Campbell brings causes of action seeking damages for previous, ongoing and future medical cost, pain and suffering, loss of use, disfigurement, emotional distress, loss of enjoyment while doing certain daily activities, loss of projected income, and related cost.

10.      In August 2017, SIG Sauer, Inc announced a voluntary upgrade program to address certain concerns, however Mr. Campbell was unaware at that time that any such program was available and his firearm did not receive the upgrades.

11.      Due to the nature of the design of the SIG P320 pistol, it was known or should have been known that the internal parts should have been manufactured with the utmost quality and be free from any structural compromise, design defect, or manufacturing defects, failure of the internal parts would be known to cause the weapon to fire in an uncontrolled and undirected manner, possibly striking the user or bystanders.

**JURISDICTION AND VENUE**

12.      Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff Chris Campbell is a citizen of the United States and the State of Missouri. Defendant SIG Sauer, Inc. has a principal place of business in New Hampshire and, accordingly, is a citizen of New Hampshire. The amount in controversy substantially exceeds, exclusive of interest and costs, $75,000.

13.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2). The discharge at issue occurred in the unincorporated town of La Russell, Lawrence County, Missouri on May 20, 2020. In particular, the discharge at issue, the injuries suffered at issued and the medical treatment for Campbell's injuries all occurred in the Western District of Missouri. Defendant SIG does business in and is subject to personal jurisdiction in this judicial district.

**PARTIES**

14.      Campbell is a 49-year-old resident of La Russell, Lawrence County, Missouri.

15.      SIG Sauer, Inc. (hereinafter referred to as "SIG" and/or "Defendant") designs and manufactures firearms for military and commercial markets in Missouri, throughout the United States, and internationally. It markets and sells its products through authorized retailers and dealers. SIG's principal place of business is in Newington, New Hampshire. Defendant is a corporation organized under the laws of the State of Delaware and has its headquarters and principal place of business in the State of New Hampshire, but which does business in a systematic and continuous manner throughout the State of Missouri and the Western District of Missouri. SIG Sauer, Inc may be served by service

upon its registered again for service: Cogency Global, Inc., 1601 Elm St., Suite 4360, Dallas, Texas 75201.

## ALLEGATIONS

16.　　The unintended discharge of the Plaintiff's firearm occurred on Wednesday, May 20, 2020 in Lawrence County, Missouri, while Mr. Campbell was walking in a field near his home.

17.　　While Mr. Campbell was walking through this field, his SIG P320 pistol was enclosed in a SIG branded molded plastic holster, which is designed to safely enclose the SIG P320 pistol, and the holster was secured directly to the Plaintiff.

18.　　The purpose of Mr. Campbell's walk was for the deterrence of coyotes, which are known to be a hazard to pets and livestock.

19.　　Mr. Campbell had not removed his SIG P320 pistol, which was worn securely on his hip and contained in the SIG branded holster and remained in its holster until the discharge, which dislodged the holster and dislodged the gun from the holster.

20.　　Mr. Campbell's P320 was loaded and chambered, which is customary for the carrying of such a semi-automatic pistol.

21.　　Mr. Campbell did not stumble, fall, or encounter debris which would have dislodged the pistol from its holster, however as Mr. Campbell began his walk across the field he heard a gun shot.

22.　　As soon as he heard the shot, he looked around for the source of the noise; within 30 seconds, he noticed blood on the top of his shoe, and, as he attempted to take a step, he felt searing pain in his left foot and left leg; Campbell then fell to the ground and began to assess his injuries.

23.     Campbell, who was alone in the field, realized he needed medical attention and was able to contact his close friend Brian Charles for assistance.

24.     Fortunately, Mr. Charles was able to quickly arrive and transported Mr. Campbell to Mercy Hospital Springfield Emergency Department, the nearest emergency room.

25.     Campbell was assessed by medical staff and it was determined that he had suffered a penetrating injury, caused by projectiles which entered the top of Mr. Campbell's left foot and lodged inside the soft tissue of his foot, requiring emergency medical intervention and removal, with a portion of the debris unable to be removed and remaining lodged in his foot.

26.     While undergoing medical care x-ray revealed that he also suffered a displaced and comminuted oblique fracture of his forth metatarsal.

27.     Following his release from the medical center Mr. Campbell has suffered continuing pain and continues to seek treatment for pain management, neurological issues, and orthopedic problems.

28.     Mr. Campbell believes that he has suffered emotional and mental harm to the point of experiencing flashbacks to the event and possible post traumatic disorder.

29.     Plaintiff continues to experience pain in his foot and now back as a result of his use of a cane for assistance in walking and he believes that the ongoing use of medication only provides temporary relief with numerous side effects.

30.     Chris Campbell's life has changed significantly since the incident. His ambulation is impaired, he continues to have pain from fragments in his foot, which is caused by the impact or the plastic shards from the holster.

31. After discharge from the hospital, on his way home, Mr. Campbell was contacted by the Lawrence County Sheriff's Department to investigate the shooting.

32. Mr. Campbell believes that some type of internal failure occurred, as there is no explanation as to why the weapon would fire while contained securely in the holster.

33. Plaintiff did review the safety information provided with his SIG P320 and contends that he is an avid shooter and has experience in shooting both pistols and other firearms.

34. Mr. Campbell has previously praised the SIG P320 and even recommended it to other members of his family and friends, citing the features of the weapon and his confidence in SIG Sauer, Inc.

35. Plaintiff was not aware of the voluntary upgrade program and does not believe he had received any type of notice, however Plaintiff does contend that he relied on the information which was provided by the manufacturer, including safety information.

36. Plaintiff had viewed the SIG Sauer website and had reviewed related literature, which specifically addressed the safety features of the P320 pistol.

37. Plaintiff was aware of SIG's claim of "safety without compromise" and the claim by SIG that, "We've designed safety elements into every necessary feature on this pistol. From the trigger to the striker and even the magazine, the P320 won't fire unless you want it to" as shown in the below illustration.





38.      Mr. Campbell would note that he has undergone informal training in firearm safety, which includes the mantra of always treating a firearm as if it were loaded and never to point the muzzle in the direction of anyone or anything, he would note that the firearm includes information about accidental discharge if the weapon is dropped or struck, which is a commonly known issue by most major firearms manufacturers, which warn of the same thing; however in Mr. Campbell's accident he did not drop, shake, or even contact the firearm before it discharged.

39.      Plaintiff was not aware of the change in the literature provided with the P320 after 2017, which warned of accidental firings as a result of dropping, or vibrations as shown in the illustration below:


All SIG SAUER pistols incorporate effective mechanical safeties to ensure they only fire when the trigger is pressed. However, like any mechanical device, exposure to acute conditions (e.g. shock, vibration, heavy or repeated drops) may have a negative effect on these safety mechanisms and cause them to fail to work as designed. After suspected exposure to these conditions, have the firearm checked by a certified armorer before using. Mechanical safeties are designed to augment, and not replace safe handling practices.**Careless and improper handling of any firearm can result in unintentional discharge.**

40.     Mr. Campbell believes that his use of the weapon both in the years before the incident and on May 20, 2020 were customary and that it was not altered or changed in any way since he received it new.

41.     Plaintiff relied on the marketing material released by SIG and contained on their website and in the firearms packaging and safety brochure, making him believe that his P320 would function in a safe manner.

42.     Plaintiff has now been made aware of other incidents involving the alleged firing of SIG P320 pistols without the trigger being pulled, including multiple claims filed alleging the same.

43.     The Plaintiff is unaware of what knowledge SIG may have had of other events, the internal manufacturing process, or how the firearm is inspected before leaving the manufacturing facility for consumer use, however the end result and product that Mr. Campbell owned was expected to operate both effectively and safely, meeting the quality and safety standards represented by SIG Sauer.

44.     On August 14, 2017, SIG Sauer announced a Voluntary Upgrade Program for the P320, however Mr. Campbell did not know of this voluntary upgrade, which may have prevented the firing of his pistol while holstered.

45.     Plaintiff is unaware of any recall of the SIG Sauer P320 pistol.

## COUNT I

## STRICT PRODUCT LIABILITY

46.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 45 of the Complaint, as though fully set forth herein.

47.     SIG Sauer, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors are engaged in the regular business of selling, designing, manufacturing, distributing, supplying, and placing firearms into the stream of commerce for consumer use, including the model P320 pistol.

48.     SIG Sauer sold the P320 for consumer purchase with its use known, advertising its safety features and its use as a personal defense weapon.

49.     The P320 that Mr. Campbell owned contained a defective part, which was either weakened, broken, or failed with the firearm being used for intended purpose which made Mr. Campbell's firearm unreasonably dangerous when put to anticipated use.

50.     On May 20, 2020, Mr. Campbell was carrying the firearm in a SIG Sauer holster, which was molded for the P320 pistol, providing for secure carrying as recommended and Mr. Campbell was carrying his weapon in a manner that would be reasonably anticipated by SIG Sauer.

51.     Unfortunately, Mr. Campbell was injured when the P320 pistol he owned fired, without shock, dropping, trigger pull, or other contact and with the trigger covered by the SIG Sauer holster, which was the result of a defective condition, unknown to the Plaintiff.

52.     Plaintiff argues that SIG Sauer breached its duties, by and through its agents, servants, workers and/or employees, and was jointly and severally careless, negligent, grossly negligent and/or reckless in the performance of its obligations.

53.     Therefore Plaintiff argues that SIG Sauer is strictly liable for his injuries.

## COUNT II

## NEGLIGENCE

54.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 53 of the Complaint, as though fully set forth herein.

55.     At all relevant times, SIG Sauer owed Plaintiff the duty to design, manufacture, inspect, and sell the P320 while exercising reasonable care to ensure his safety and prevent injury from its anticipated use.

56.     If a problem were known or arose the Defendant owed a duty to the Plaintiff to inform him of the risk.

57.     Plaintiff believes that SIG Sauer breached its duties by not properly inspecting, designing, or developing the P320 striker fire system, and by not anticipating possible mechanical failures over time, recalling the pistol for inspection, or warning customers who purchased the P320 prior to 2017 of the known dangers of excessive vibrations and failures.

58. Defendants should have notified the Plaintiff of the optional upgrade, which may have prevented the accidental discharge of his weapon.

59. As a manufacturer of firearms, SIG knew or should have known that exposing users to the dangerous, defective, and hazardous conditions existing in the gun could give rise to serious bodily injuries to such users.

60. Any defect in the firearm would not have been visible to anyone except a trained technician, not a reasonable consumer user.

61. SIG Sauer's negligence as alleged in this Count directly and proximately caused the May 20, 2020, discharge and Plaintiff's injuries resulting from the accident.

62. As a direct and proximate result of the negligence set forth in this Count, Plaintiff suffered emotional distress, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and loss of earnings and earning capacity. These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 62 of the Complaint, as though fully set forth herein.

64. At all relevant times, SIG Sauer was in the business of marketing, selling, and distributing weapons, including the gun causing Plaintiff's injuries.

65. SIG knew of the ordinary purposes for which the gun was intended and impliedly warranted it to be of merchantable quality, safe, and fit for such purposes and all other reasonably foreseeable uses.

66.     At all relevant times, Plaintiff used the gun in its intended manner and for its intended purpose and reasonably relied on the skill, judgment, and implied warranty of SIG.

67.     SIG breached the implied warranty because at the time it left SIG's possession it was not of merchantable quality and was unreasonably dangerous and unfit for the ordinary and reasonably foreseeable purposes for which it was intended and its reasonably foreseeable misuses by virtue of failing to use due care in its design and manufacturing, failing to provide notice of the voluntary upgrade, failing to provide notice of the updated warning about excessive vibrations, failing to properly test or inspect, and failing to warn consumers of any known issues causing the weapon to fire without the trigger being engaged.

68.     The firearm was not fit for its intended and ordinary purpose, and did not perform as safely as the label indicated, not being safe without compromise.

69.     Plaintiff was in the class of users that could have been reasonably anticipated as product users by SIG and Mr. Campbell's use was customary, ordinary, and within the expected level of use that should have been anticipated by SIG.

70.     As a direct and proximate result of the breaches set forth in this Count, Plaintiff suffered emotional distress, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and loss of earnings and earning capacity. These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

## COUNT IV

### BREACH OF EXPRESS WARRANTY

71.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 70 of the Complaint, as though fully set forth herein.

72.    At all times material hereto, SIG Sauer was in the business of marketing, selling, and distributing weapons, including the P320 owned by the Plaintiff.

73.     Upon information and belief, SIG knew or had reason to know the gun would be situated in holsters and that its placement while wearing would not result in an accidental discharge of the weapon.

74.    Accordingly, the P320 owned by Mr. Campbell included the implied warranty that the firearm was safe, suitable for placement within a SIG holster, and free from any defect that might cause it to fire without contact with the trigger.

75.    Plaintiff had used the firearm for its intended purpose and in a reasonable manner throughout its ownership and since new, the weapon had not been misused or modified from its original condition.

76.    SIG breached the express warranty because at the time it left SIG's possession it was not of merchantable quality and did not meet the standards as advertised as it was not fit for personal use, or for carrying in a holster, further Plaintiff alleges that SIG failed to test, inspect, or provide information on voluntary upgrades that may have prevented this incident, all while expressly indicating to the Plaintiff that the firearm was both safe and reliable.

77.    As a direct and proximate result of the breaches set forth in this Count, Plaintiff suffered emotional distress, mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and loss of earnings and earning capacity. These injuries are

either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

## COUNT V

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(a)

78.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 77 of the Complaint, as though fully set forth herein.

79.     The SIG P320 is a consumer product as defined in 15 U.S.C. § 2301(1).

80.     Plaintiff is a consumer as defined in 15 U.S.C. § 2301(3).

81.     At all relevant times, SIG Sauer was a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

82.     In connection with the sale of the P320 SIG Sauer made implied and express warranties, as defined in 15 U.S.C. § 2301(6), that the P320 was safe for its intended purposes and would not fire without a trigger pull.

83.     SIG Sauer breached the warranties it made stating that the P320 was safe for its intended and foreseeable uses and particular purposes.

84.     In 2017, SIG attempted to modify and disclaim the implied and express warranties it made regarding the safety of the P320 by stating that other factors could make the gun fire without trigger pull.

85.     SIG Sauer's attempt to modify and/or disclaim its prior warranties regarding the safety of the P320 violate section 2308(a) of the Magnuson-Moss Warranty Act (the "Act").

86.     SIG Sauer's violation of the Act has been the direct and proximate cause of substantial economic and non-economic damages incurred by Plaintiff.

87.     Plaintiff is entitled damages he has or will sustain including medical cost, past, present and future, pain and suffering, loss of enjoyment of daily activities, mental distress, disfigurement, and the related cost of treatments associated with the Plaintiff's injuries now and in the future.

88.     Plaintiff believes he is entitled to pre/post judgment interest set at the statutory rate.

89.     Plaintiff believes he is entitled to exemplary damages due to the alleged negligence of the Defendant, in an amount in excess of $75,001.00 dollars.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that he have judgment against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: September 9, 2021

Respectfully submitted,

/S/Timothy Intessimone
Timothy Intessimone
Missouri Bar Number 70142
SOUTHWEST MISSOURI LAW & MEDIATION LLC
1421 South Main
Joplin, MO 64801
(417) 622-4036
(417) 319-2177
tintessi@swmolaw.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed and served via the Court's electronic filing system to the following this 10th day of September, 2021, to:


**Stephen L. Beimdiek**
Lashly & Baer, PC
714 Locust Street
St. Louis, MO 63101
(314) 621-2939
Fax: 314-621-6844
Email: sbeim@lashlybaer.com

**Jeffrey C Klaus**
Lashly & Baer, PC
714 Locust Street
St. Louis, MO 63101
314-621-2939
Fax: 314-621-6844
Email: jklaus@lashlybaer.com

*/S/Timothy Intessimone*
Timothy Intessimone